<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

</div>

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
                    Petitioner,         )
                                        )       CIVIL ACTION NO. 07-12063-JLT
        v.                              )
                                        )
WAYNE HUNT,                             )
                                        )
                    Respondent.         )
_____)

<div align="center">

**GOVERNMENT'S TRIAL BRIEF**

</div>

**I.      INTRODUCTION**

        In accordance with the Court's April 9, 2009 Pretrial Order, the government submits this

trial brief.  This civil action that was commenced under the Adam Walsh Child Protection and

Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006) (the "Adam Walsh Act"), by the

March 7, 2007 certification of the Bureau of Prisons ("BOP") that Wayne Hunt ("Hunt"), who

was then approaching the end of his federal prison sentence, is a "sexually dangerous person"

("SDP").  Dkt. No. 1; see also, 18 U.S.C. § 4248(a).

        This Court must now determine whether there is clear and convincing evidence that Hunt

is a sexually dangerous person, as that term is defined under the Adam Walsh Act.  See 18

U.S.C. § 4248(a) and (d).  As discussed below, the government expects to prove that Hunt is a

sexually dangerous person who must be civilly committed because (1) he has been convicted of,

and has admitted to, numerous acts of child molestation and/or sexually violent conduct; (2) he

suffers from a serious mental illness, abnormality, or disorder, namely, pedophilia; and (3) as a

result of Hunt's pedophilia, he would have serious difficulty in refraining from child molestation

and/or sexually violent conduct if released.  See 18 U.S.C. § 4247(a)(5)-(6).

## II.    RELEVANT PROCEDURAL BACKGROUND

On March 7, 2007, the BOP certified that Hunt is a "sexually dangerous person."  Dkt. No. 1; see also, 18 U.S.C. § 4248(a).  The certification both requires the district court to conduct a hearing to determine if Hunt is a sexually dangerous person and stays Hunt's release from the BOP until such a determination is made.  Id.  Hunt is housed at the BOP's Federal Medical Center at Devens, where he is expected to remain through the conclusion of this commitment proceeding.

In a May 13, 2008 Order, the Court, at Hunt's request, designated Dr. Bernard Katz as an examiner in this case.  Dkt. No. 20.  At the government's request, the Court permitted Dr. Amy Phenix to serve as the government's expert.  Id.  By order dated November 13, 2008, the court appointed, at Hunt's request, Dr. Luis Rosell to serve as Hunt's second mental health examiner. Drs. Katz and Rosell – both of whom Hunt selected – have prepared written reports in this case and are expected to testify at trial that Hunt is a sexually dangerous person.  The government's expert, Dr. Phenix, also has prepared a written report and is expected to testify at trial that Hunt is a sexually dangerous person.

On February 25, 2009, Hunt filed a motion to continue the trial, which had been scheduled for March 16, and indicated that he had retained a third expert, Dr. Joseph Plaud.  Dr. Plaud submitted a written report on April 10 in which he opines that Hunt is not sexually dangerous, in part, because he is 63 years old.  Hunt also retained Dr. Howard Barbaree and presumably intends to proffer him as an expert on age.  Dr. Barbaree has not interviewed Hunt, reviewed any of Hunt's criminal or other records, and does not offer an opinion on whether Hut

is a sexually dangerous person.

On February 25, 2009, Hunt made a facial challenge to the constitutionality of the Adam Walsh Act.  Dkt. No. 45.  By Order dated March 15, 2009, this Court rejected that challenge, finding, among other things, that 18 U.S.C. § 4248 is a civil, not criminal statute.  Dkt. No. 51.

## III.    LEGAL PRINCIPLES

As defined in the Adam Walsh Act, a sexually dangerous person is "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others."  18 U.S.C. §4247(a)(5).  Congress did not further define child molestation.  The BOP regulations, however, define "sexually violent conduct" as "any unlawful conduct of a sexual nature with another person ("the victim") that involves: a) the use or threatened use of force against the victim; b) threatening or placing the victim in fear that the victim, or any other person, will be harmed; c) rendering the victim unconscious and thereby engaging in conduct of a sexual nature with the victim; d) administering to the victim, by force of threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance, and thereby substantially impairing the ability of the victim to appraise or control conduct; or e) engaging in such conduct with a victim who is incapable of appraising the nature of the conduct, or physically or mentally incapable of declining participation in, or communicating unwillingness to engage in, that conduct."  28 C.F.R. § 549.92 (2008).  The regulations define "child molestation," for purposes of certification, as including "any unlawful conduct of a sexual nature with, or sexual exploitation of, a person under the age of 18 years." 28 C.F.R. § 549.93 (2008).

3

Sexually dangerous to others, in turn, "means that the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released."  18 U.S.C. §4247(a)(6).  Congress did not further define or explain its use of the phrase "serious difficulty in refraining from."  Commitment proceedings under the Adam Walsh Act are civil, as opposed to criminal, proceedings.  See United States v. Shields, 522 F. Supp. 2d 317, 338 (D. Mass. 2007); Kansas v. Hendricks, 521 U.S. 346, 369 (1997).  Given that statutory context, the government must show that:

1. Hunt has engaged or attempted to engage in sexually violent conduct or child molestation in the past;

2. Hunt currently suffers from a serious mental, illness, abnormality, or disorder;[1] and

3. As a result of a serious mental, illness, abnormality, or disorder, Hunt would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

The government must demonstrate by "clear and convincing evidence" that Hunt is a sexually dangerous person.  See 18 U.S.C. § 4248(d).  The clear and convincing evidence standard is higher than the "preponderance of the evidence" standard typically used in civil cases and requires the government to prove its contentions are "highly probable."  Colorado v. New

---

[1]  The government must establish a current serious mental illness, abnormality, or disorder.  As the Supreme Court has recognized in a civil commitment context, however, "[p]revious instances of violent behavior are an important indicator of future violent tendencies."  Hendricks, 521 U.S. at 358 (quoting Heller v. Doe, 509 U.S. 312, 323 (1993)).

<u>Mexico</u>, 467 U.S. 310, 316 (1984); John W. Strong, ed., 2 <u>McCormick on Evidence</u>, Law of Evidence § 340, West Group 1999).

IV.   <u>**ARGUMENT**</u>

    **A.**    **Hunt Has Engaged In, Or Attempted To Engage In, Sexually Violent Conduct In The Past.**

Hunt, who is now 63 years old, has a history of sexual violence, most of which involves molesting numerous boys, that dates back to the 1970s, including the following:

- Prior to his first arrest for a sexual offense in June of 1973, at age 27, Hunt engaged in mutual oral sex with an eleven to twelve year old boy that he met at a mall in California. On two or three occasions, he engaged in mutual masturbation with a young male approximately 14 years of age whom he had met at a carnival.

- On June 4, 1973, Hunt was arrested and charged in California Superior Court with two felony counts of committing a lewd and lascivious act upon a child under the age of fourteen in violation of § 288 of the California Penal Code. The two 11 year-old victims testified that Hunt approached them at a carnival and that he tickled them, kissed them, and attempted to or actually did put his hand in their pants. Hunt fondled one victim's penis. Hunt pled guilty to a single count of a lesser included offense, a misdemeanor violation of California Penal Code § 647a (annoying or molesting a child under 18) and the second charge was dismissed.

- On June 1, 1975, Hunt was arrested in South Holland, Illinois, and charged with Indecent Liberties with a Child. There is no disposition to the offense and the circumstances are unknown.

- Hunt reported in an interview with one of the Court-designated examiners, Dr.

Rosell, that at age 29 (1975-1976) he had four victims between the ages of 12-16 on whom he performed oral sex.

• Records reflect that in 1975, Hunt had three charges of Aggravated Rape, six charges of Indecent Behavior with a Juvenile, and one charge of Aggravated Crime Against Nature, in Terrebone Parish, Louisiana.  He also had one charge of Contributing to Delinquency of a Minor and one charge of Aggravated Crime Against Nature in St. Landry Parish, Louisiana.

• Hunt has acknowledged to Dr. Rosell that, prior to his arrest on federal kidnapping charges in September 1976, Hunt worked as a karate instructor for young boys between the ages of 12 and 16 in Louisiana.  Hunt indicated that he victimized some of the boys while teaching karate, but no charges were pressed.

• On March 15, 1977, Hunt reported to BOP psychiatrists the following offense history:

> [F]or the past 20 years he [Hunt] has been involved in pedophillic activity, such as masturbatory practices with boys between the ages of 8 years old to 15 years old, but he prefers boys who are 12 years old, thin, medium height and neatly dressed.  Most frequently Mr. Hunt masturbates the boys, but at times the boy will masturbate him and he will sleep with the boy, but he denies kissing or hugging with the boy while in bed.  As an example, Mr. Hunt indicates that from January 1976 until his arrest in September 1976, he has had masturbatory practices with about 15-20 different boys and up to 25 times with the same boy.

• On September 13, 1976, Hunt was indicted in Louisiana on charges that he kidnapped a 12 year old boy, K.J.T, and took him across state lines, in violation of 18 U.S.C. §1201.  Hunt acknowledges that his motivation in committing that crime was an interest in having sex with K.J.T., but denies having molested K.J.T.  Hunt possessed a firearm during the

course of this offense but claims that the "weapon was not loaded and was not displayed before the juvenile subject."  Hunt pled guilty to this offense and initially received a life sentence but that sentence later was reduced to ten years imprisonment.[2]

- Hunt returned to New York after his release from federal custody, and in the summer of 1982, he began sexually victimizing a group of new minor victims.  This conduct continued until his arrest in 1985.  Ultimately, Hunt sexually abused well over a dozen children between 1982 and 1985  whose ages ranged from 7 to 14.

- Hunt began abusing G.D., a nine year-old male relative, in the Summer of 1982. Hunt's abuse of G.D. involved oral and anal sex, and Hunt photographing the conduct. According to Hunt, "[t]here is no telling how many times we had sex.  In [G.D.]'s case at least some type of abuse daily."

- Hunt began abusing J.Z., an eleven year-old male, in October 1982 and that abuse was ongoing until Hunt's arrest in 1985.  "I sexually offended [against J.Z.] by forcing, through manipulation, mutual fondling and masturbation, I forced, through coercion and manipulation, his mouth on my penis, his penis in my mouth, and my penis into his anus while other victims took pictures of those sex acts under my direction."  Hunt would further direct J.Z. bring other boys for Hunt to sexually abuse.

- Hunt began abusing H.R., a nine year-old male, approximately three years prior to his arrest in 1985 and that abuse continued until Hunt's arrest in 1985.  "I sexually offended

---

[2]  Hunt was paroled after serving five years of his ten-year sentence.  He subsequently violated his parole and was required to serve the balance of the ten-year sentence in federal prison. Hunt was at FMC-Devens serving the balance of his parole when the BOP certified him as a sexually dangerous person.

H[R] by coerced mutual full body massages, mutual masturbation, forcing through manipulation my penis in his mouth and my mouth on his penis and my penis in his anus.  Furthermore, under my direction he would photograph others in sexual acts and participate in sex with others."  Hunt also directed H.R. to have sex with H.R.'s seven year-old younger brother, J.R.

- Hunt began abusing L.A., a twelve year-old male, and H.D., a fourteen year-old male, approximately four years prior to his arrest in 1985.  Hunt has acknowledged that he photographed these children engaged in sexual acts, and that he engaged in oral and anal sex with both L.A. and H.D.

- On April 6, 1985, Hunt was indicted and arrested in New York state court on charges that he had engaged in sodomy with a thirteen year-old boy and had engaged in sexual abuse of a twelve year-old boy.

- In April and May of 1985, Hunt rented a generator and an ATV from local businesses and failed to return them.  He ceased making payments on a Ford pick up truck that he had purchased in May of 1984.  Hunt admitted to Dr. Katz that he stole the generator and ATV so that he could continue molesting children in a remote location.  On October 28, 1985, Hunt pled guilty and was convicted of grand larceny in Albany County Court and was sentenced to two to four years of incarceration.

- On August 8, 1985, New York State Police investigating an area in which Hunt's pick-up truck had been located found two juveniles, L.A., a male age twelve, and H.D., a male age fourteen, at a campsite near Hunt's vehicle.  At the time of Hunt's arrest in August 1985, among the items located in Hunt's trailer (along with the stolen ATV and generator) were numerous photographs of children engaged in sexual acts with Hunt and with each other.  On

8

November 18, 1985, Hunt pled guilty to one count of the initial sodomy indictment, and on December 5, 1985, Hunt was sentenced to two to four years of incarceration for that offense.

● Further investigation of the photos found in Hunt's trailer led to the identification of numerous child victims and the filing of a sixty-count indictment charging Hunt with, among other things, kidnapping, use of children in a sexual performance, promoting the sexual performance of children, and sodomy in the first and second degrees. Two years later, on October 15, 1987, Hunt pled guilty to eighteen counts of the sixty-count indictment. Specifically, Hunt pled guilty in New York state court to:

- in May of 1985, kidnapping a twelve year-old boy, L.A., and a fourteen year-old boy, H.D.

- between June and August 1984, authorizing or inducing a nine year-old boy, G.D., a nine year old boy, H.R., a thirteen or fourteen year-old boy, J.S.#1, and an eleven year-old boy, J.Z., to engage in a sexual performances which consisted of taking photographs of G.D., H.R., J.S.#1, and J.Z. while they engaged in sexual conduct, a class C felony.

- between May and July 1984, offering or agreeing to promote photographs depicting a twelve year-old boy, J.S.#2, a twelve to thirteen year-old girl, L.W., and an eleven year-old boy, J.Z., engaged in sexual conduct.

- between December 1984 and January 1985, engaging in deviant sexual intercourse with a ten year-old boy, G.D., such conduct involving Hunt performing oral and/or anal sex upon G.D.

- between June and August 1984, engaging in deviant sexual intercourse

9

with a ten year-old boy, J..F., a seven year-old boy, J.R., a nine year-old boy, H.R., and an eight year-old boy, A.W., such conduct involving Hunt performing oral and/or anal sex upon these four boys.

- in August of 1984, engaging in deviant sexual intercourse with a ten year old boy, P.W., such conduct involving  Hunt performing oral sex upon P.W.

- between May and July 1984, engaging in deviant sexual intercourse with a thirteen year old male, J.S.#1, such conduct involving Hunt performing oral sex upon J.S.

- between June and August 1984, engaging in deviant sexual intercourse with a twelve or thirteen year-old male, J.S.#2, such conduct involving Hunt performing oral sex upon J.S.

- between November and December 1984, engaging in deviant sexual intercourse with an eleven year-old male, P.S., such conduct involving Hunt performing oral and/or anal sex upon P.S.

● On November 24, 1987, Hunt was sentenced to 12½  to 25 years incarceration on Counts 1-2 (Kidnapping 2nd degree) and Counts 11, 13-16, and 19 (Sodomy 1st degree); 7½  to 15 years incarceration on Counts 3-6 (use of a child in a sexual performance); and 3½ to 7 years incarceration on Counts 7-9 (promoting sexual performance of a child) and Counts 22, 25, and 26 (Sodomy 2nd degree).  All sentences were ordered to be served concurrently.  Hunt is on parole from that sentence through July 11, 2012.

**B.      Hunt Presently Suffers From A Serious Mental Illness, Abnormality, Or Disorder.**

Both Court-designated examiners, Dr. Katz and Dr. Rosell, and the government's expert, Dr. Phenix, have diagnosed Hunt with pedophilia.  Drs. Rosell and Phenix made an additional diagnosis of antisocial personality disorder.  Hunt's expert, Dr. Plaud, has opined that a diagnosis of pedophilia "is possible" in this case.

**1.      Pedophilia**

Pedophilia "involves sexual activity with a prepubescent child (generally age 13 years or younger)."  American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders: Text Revision</u> 685, 701 (4th ed. 2000) ("DSM-IV-TR").  The DSM-IV-TR lists the following diagnostic criteria for pedophilia:

> A.      Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger).
>
> B.      The person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.
>
> C.      The person is at least 16 years and at least 5 years older than the child or children in Criterion A.

DSM-IV.TR at 572.

All three doctors who have diagnosed Hunt with pedophilia noted that he is attracted to males.  According to the DSM-IV-TR, the course of pedophilia "is usually chronic, especially in those attracted to males.  The recidivism rate for individuals with Pedophilia involving a preference for males is roughly twice that for those who prefer females."  DSM-IV-TR at 571.

11

### 2.    Antisocial Personality Disorder

Antisocial Personality Disorder ("APD") is a mental disorder recognized by the psychiatric and psychological communities and marked by a pattern of disregard for, and violation of, the rights of others.  See DSM-IV-TR at 701.  The DSM-IV-TR not only includes APD as a mental disorder, it notes that mental disorders can be diagnosed in varying degrees of severity ranging from "mild" to "severe." Id. At 2-3.  When making a determination of the severity of a mental disorder, such as APD, an examiner must take into account the number and intensity of the symptoms and any resulting occupational or social impairment.  Id.

The DSM-IV-TR lists the following diagnostic criteria for APD:

A.    There is a pervasive pattern of disregard for and violation of the rights of others occurring since age 15 years, as indicated by three (or more) of the following:

    1.    failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest;

    2.    deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure;

    3.    impulsivity or failure to plan ahead;

    4.    irritability and aggressiveness, as indicated by repeated physical fights or assaults;

    5.    reckless disregard for safety of self or others;

    6.    consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations;

    7.    lack of remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another.

B.    The individual is at least age 18 years.

C.    There is evidence of a Conduct Disorder with onset before age 15 years.

DSM-IV-TR, pp. 701-06.  A diagnosis of APD only requires an examiner to find an individual

meets three of the above sub-criteria of Criteria A.  Moreover, the fact that Hunt has been

incarcerated for over twenty years has no bearing on this diagnosis.  According to Dr. Dennis

Doren, "someone's 'good' institutional behavior should not be used to discount a pattern of

'violating' community behavior.  Actions exhibited in the general community should be given

more weight as they are a far better measure of the person's behavioral 'pattern' that 'deviates

markedly from the expectations of the individual's culture.'  Even long periods of incarceration

significantly composed of rule-abiding behavior should probably not be viewed as outweighing

repetitive 'violating' behaviors during short periods of time in the general community."  Dennis.

M. Doren, Evaluating Sex Offenders: A Manual for Civil Commitments and Beyond, p. 89 (Sage

Publications, Inc. 2002).

> **C.     As A Result Of A Serious Mental Illness, Abnormality, Or Disorder, Hunt
> Would Have Serious Difficulty In Refraining From Sexually Violent Conduct
> If Released.**

The final element required for civil commitment under the Adam Walsh Act is that, as a

result of his mental illness, Hunt "would have serious difficulty in refraining from sexually

violent conduct and/or child molestation, if released from confinement."  18 U.S.C. § 4247(a)(6).

Because Congress did not further define or explain its use of the phrase "serious difficulty in

refraining from," this Court is left with the plain meaning of the words used.  In Hendricks,

however, the Supreme Court recognized that the Kansas civil commitment statute required only

proof of the respondent's *risk to reoffend* if released.  521 U.S. at 357 (noting statute required

proof of "likelihood" of committing sexually violent conduct)."[3]  Thus, the statute does not require proof that the a particular respondent will reoffend, as Congress presumably recognized such a burden is impossibly high, but rather requires an assessment of the risk a respondent presents of reoffending.

The government expects the evidence will show, through expert testimony and accompanying documents that, given his history and his diagnosis, Hunt will have serious difficulty in refraining from sexually violent conduct and/or child molestation if released.  Here, the Court-designated examiners and the government's expert used different methodologies to assess Hunt's risk of sexual recidivism.  Dr. Katz, the Court's first designated examiner, scored an actuarial instrument that measures sexual recidivism, the Static-99, but relied mainly on his clinical judgment.  The Court's second designated examiner, Dr. Rosell, used an adjusted actuarial approach.  That is, he scored the Static-99 and also examined certain empirically-validated dynamic risk factors.  Finally, the government's expert, Dr. Phenix, uses a pure actuarial approach in which she scores one or more actuarial instruments but does not adjust the risk level based on factors outside the instrument.  Despite the use of three different methodologies to assess risk, the two court-designated examiners and the government's expert each concluded that Hunt is a sexually dangerous person.

It is generally accepted in the sex offender field that validated actuarial risk assessment instruments provide a more accurate and reliable assessment of a sex offender's likelihood of

---

[3]  The government has not found a state civil commitment statute that uses precisely the same language as the Adam Walsh Act, but the wording of the Kansas civil commitment statute is similar and is the statute examined by the Supreme Court in Hendricks.  The statute "establishes procedures for civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' are likely to engage in 'predatory acts of violence.'").  Kan. State. Ann. § 59-29a01, et seq. (1994).

reoffending than even the best and most experienced clinical judgments.  See United States v. Shields, 2008 WL 544940, *2 (D. Mass. Feb. 26, 2008) (finding that actuarial risk assessments are reliable under Daubert, in part because they "are generally accepted as a reliable methodology within the relevant scientific community and they have been subject to peer review").

The Supreme Court of Illinois considered the use of actuarial risk assessment instruments in a case that questioned their admissibility under Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).  In re: Commitment of Stephen E. Simons, 213 Ill.2d 523, 821 N.E. 2d 1184 (2004).  The court concluded: "[W]hether or not actuarial risk assessment is subject to Frye, there is no question that it is generally accepted by professionals who assess sexually violent offenders and therefore is perfectly admissible in a court of law.  As of this writing, experts in at least 19 other states rely upon actuarial risk assessment in forming their opinions on sex offenders' risks of recidivism."  Simons, 213 Ill.2d at 535, 821 N.E. at 1192 (citations omitted).[4]

In considering the risk assessment instruments and the established rates of recidivism, terminology, again, is important.  The rates of recidivism associated with the different scores are what experience and research have established as the rates at which all male sex offenders with particular scores will recidivate over different periods of time.  The rates should not be viewed as a prediction of whether any particular sex offender will reoffend, and that is certainly not what the Adam Wash Act requires this Court to determine.  Risk assessment reoffense rates are most

---

[4] As the Adam Walsh Act was enacted in 2006, and state civil commitment statutes for sex offenders have existed in many states for a long time, almost all reported decisions are from state courts.  The Simons case from the Supreme Court of Illinois is particularly instructive, as the opinion includes a thorough review of case law from other jurisdictions with sex offender civil commitment statutes, as well as the literature in the sex offender field, in arriving at its holding that risk assessment instruments such as the Static-99 are admissible on the issue of sexual dangerousness.

helpful when viewed in light of the dangerousness "element" of the statute, which requires this Court to determine, among other things, whether Hunt would have serious difficulty in refraining from sexually violent conduct or child molestation if released.  If Hunt credibly falls within the moderate or high risk category of sex offenders by one or more validated risk assessment instruments, the government contends that such evidence is a strong indication that he meets the dangerousness "element" of the Adam Walsh Act.

## <u>CONCLUSION</u>

For all of these reasons, and based on the evidence admitted at trial, the government respectfully requests that this Court find that Hunt is a sexually dangerous person and civilly commit him to the custody of the Bureau of Prisons.

<div style="margin-left:45%">

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Jennifer A. Serafyn
Jennifer A. Serafyn
Mark J. Grady
Assistant United States Attorneys
United States Attorney's Office
Moakley U.S Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

</div>

Dated: April 17, 2009

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 17, 2009.

<div style="text-align: right;">

 /s/ Jennifer A. Serafyn
Jennifer A. Serafyn
Assistant United States Attorney

</div>