**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Petitioner, | ) ) | CIVIL ACTION NO. 07-12063-JLT |
| v. | ) ) | |
| WAYNE HUNT, | ) ) | |
| Respondent. | ) ) | |

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF A**
**FINDING THAT HUNT IS A SEXUALLY DANGEROUS PERSON**

**I.   LEGAL PRINCIPLES**

This civil action was commenced under the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006) (the "Adam Walsh Act"), by the March 7, 2007 certification of the Bureau of Prisons ("BOP") that Wayne Hunt ("Hunt"), who was then approaching the end of his federal prison sentence, is a "sexually dangerous person." [D. 1]; see also, 18 U.S.C. § 4248(a).

As defined in the Adam Walsh Act, a "sexually dangerous person" is "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). Congress did not further define child molestation. BOP regulations, however, define "sexually violent conduct" as "any unlawful conduct of a sexual nature with another person ('the victim') that involves: a) the use or threatened use of force against the victim; b) threatening or placing the victim in fear that the victim, or any other person, will be harmed; c) rendering the victim unconscious and thereby engaging in conduct of a sexual nature with the victim; d) administering to the victim, by force

or threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance, and thereby substantially impairing the ability of the victim to appraise or control conduct; or e) engaging in such conduct with a victim who is incapable of appraising the nature of the conduct, or physically or mentally incapable of declining participation in, or communicating unwillingness to engage in, that conduct." 28 C.F.R. § 549.92 (2008). The regulations define "child molestation," for purposes of certification, as including "any unlawful conduct of a sexual nature with, or sexual exploitation of, a person under the age of 18 years." 28 C.F.R. § 549.93 (2008).

Sexually dangerous to others, in turn, "means that the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6). Congress did not further define or explain its use of the phrase "serious difficulty in refraining from." Commitment proceedings under the Adam Walsh Act are civil, as opposed to criminal, proceedings. See United States v. Shields, 522 F. Supp. 2d 317, 338 (D. Mass. 2007); United States v. Carta, 503 F.Supp.2d 405, 409 (D. Mass. 2007); Kansas v. Hendricks, 521 U.S. 346, 369 (1997). Given that statutory context, the government must show that:

1. Hunt has engaged or attempted to engage in sexually violent conduct or child molestation in the past;

2. Hunt currently suffers from a serious mental, illness, abnormality, or disorder;[1]

---

[1] The government must establish a current serious mental illness, abnormality, or disorder. As the Supreme Court has recognized in a civil commitment context, however, "[p]revious instances of violent behavior are an important indicator of future violent tendencies." Hendricks, 521 U.S. at 358 (quoting Heller v. Doe, 509 U.S. 312, 323 (1993)).

and

3. As a result of a serious mental, illness, abnormality, or disorder, Hunt would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

The government must demonstrate by "clear and convincing evidence" that Hunt is a sexually dangerous person. See 18 U.S.C. § 4248(d). The clear and convincing evidence standard is higher than the "preponderance of the evidence" standard typically used in civil cases and requires the government to prove its contentions are "highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984); John W. Strong, ed., 2 McCormick on Evidence, Law of Evidence § 340, West Group 1999).

## II.  ARGUMENT

### A. Hunt Has Engaged Or Attempted To Engage In Child Molestation In The Past.

The evidence at trial demonstrated that Hunt meets the first element of the Adam Walsh Act because he indisputably engaged in child molestation in the past.[2]  Indeed, all of the experts who evaluated Hunt – including the three experts whom Hunt chose, Drs. Bernard Katz, Luis Rosell, and Joseph Plaud – testified that Hunt's past conduct meets this element of the statute. Tr. 4/27/09 43:17-21 (Rosell); Tr. 4/28/09 93:10-20 (Katz); Tr. 4/29/09 11:19-22 (Phenix); Tr.

---

[2] "The term child molestation means any unlawful conduct of a sexual nature with, or sexual exploitation of, a person under the age of 18 years." United States v. Abregana, 574 F.Supp.2d 1145, 1158 (D.Hawai'i 2008). BOP regulations interpret that term similarly.  28 C.F.R. § 549.93 (2008). This Court would appear to share that definition. See Carta, 2009 WL 1560199, * 9. Whatever may be the boundaries of the term, *i.e.*, whether 18 or some other age, it cannot be rationally argued that Hunt's prolific sexual offending against boys age 12 and younger does not qualify as "child molestation."

4/30/09 15:6-11 (Plaud).  Hunt's past acts of child molestation are detailed in the chronology that was admitted into evidence as Exhibit O at trial and through certified convictions, which were admitted into evidence as Exhibits 16 through 25.

### B. Hunt Currently Suffers From A Serious Mental Illness, Abnormality, Or Disorder.

"The second showing required of the Government is that Respondent currently suffers from a serious mental illness, abnormality, or disorder."  Carta, 2009 WL 1560199, *9.  Each of the four experts who evaluated Hunt – Drs. Rosell, Katz, Phenix, and Plaud – diagnosed Hunt with Pedophilia, which is a serious mental illness, abnormality, or disorder.  Tr. 4/27/09 43:10-13; 95:5-15; 99:20-22 (Rosell); Tr. 4/28/09 97:19-24 (Katz); Tr. 4/29/09 12:25-13:9 (Phenix); Tr. 4/30/09 15:12-19; 22:12-15 (Plaud).  Drs. Rosell and Phenix made an additional diagnosis of antisocial personality disorder.  Tr. 4/27/09 95:23-25 (Rosell); Tr. 4/29/09 22:5-7 (Phenix).

#### 1. Hunt Suffers From Pedophilia.

The government has proved, by clear and convincing evidence, that Hunt suffers from Pedophilia.  Pedophilia "involves sexual activity with a prepubescent child (generally age 13 years or younger)."  Ex. I.  The Diagnostic and Statistical Manual of Mental Disorder: Text Revision ("DSM-IV-TR") lists the following diagnostic criteria for Pedophilia:

- A. Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger).

- B. The person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.

- C. The person is at least 16 years and at least 5 years older than the child or children in Criterion A.

Id.; Tr. 4/27/09 97:21-98:13.

Drs. Rosell, Katz, and Phenix testified that Hunt is a pedophile who is sexually attracted to boys. Tr. 4/27/09 98:23-24 (Rosell); Tr. 4/28/09 105:24-106:13 (Katz); Tr. 4/29/09 13:7-9; 14:14-17 (Phenix). This is significant because, according to the DSM-IV-TR, the course of Pedophilia "is usually chronic, especially in those attracted to males. The recidivism rate for individuals with Pedophilia involving a preference for males is roughly twice that for those who prefer females." Ex. I; Tr. 4/27/09 99:13-17.

### 2. Hunt Suffers From Antisocial Personality Disorder.

The government has proved, by clear and convincing evidence, that Hunt suffers from Antisocial Personality Disorder ("APD"). APD is a mental disorder recognized by the psychiatric and psychological communities and marked by a pattern of disregard for, and violation of, the rights of others. Ex. H. The DSM-IV-TR lists the following diagnostic criteria for APD:

A.  There is a pervasive pattern of disregard for and violation of the rights of others occurring since age 15 years, as indicated by three (or more) of the following:

1. failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest;

2. deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure;

3. impulsivity or failure to plan ahead;

4. irritability and aggressiveness, as indicated by repeated physical fights or assaults;

5. reckless disregard for safety of self or others;

6. consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations;

7. lack of remorse, as indicated by being indifferent to or rationalizing

>
> having hurt, mistreated, or stolen from another.

B.  The individual is at least age 18 years.

C.  There is evidence of a Conduct Disorder with onset before age 15 years.

Id.  Both Drs. Rosell and Phenix testified that Hunt meets the diagnostic criteria for APD.  Tr. 4/27/09 95:23-25 (Rosell); Tr. 4/29/09 22:5-7 (Phenix).  Dr. Katz did not make such a diagnosis but recognized it to be "reasonable."  Tr. 4/28/09 131:5-10.

**C. As A Result Of A Serious Mental, Illness, Abnormality, or Disorder, Hunt Would Have Serious Difficulty In Refraining From Sexually Violent Conduct Or Child Molestation If Released.**

The government has proved, by clear and convincing evidence, that as a result of Hunt's Pedophilia, he "would have serious difficulty in refraining from sexually violent conduct and/or child molestation, if released from confinement."  18 U.S.C. § 4247(a)(6).  Indeed, three of the four experts in this case testified that as a result of his Pedophilia, Hunt would have serious difficulty in refraining from child molestation if released.  Tr. 4/27/09 43:10-13 (Rosell); Tr. 4/28/09 104:19-105:1 (Katz); Tr. 4/29/09 24:2-7 (Phenix).

Congress did not further define or explain its use of the phrase "serious difficulty in refraining from," and thus, this Court is left with the plain meaning of the words used.  The United States Supreme Court, in the context of the commitment of a sexually dangerous person, has made clear that "serious difficulty" does not require total or complete lack of control and has certainly recognized that there is no requirement of mathematical precision.  See Kansas v. Crane, 534 U.S. 407, 413 (2002)) (citing Kansas v. Hendricks, 521 U.S. 346, 358 (1997) ("we recognize that in cases where lack of control is at issue, 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious

difficulty in controlling behavior.").

Further, the language cannot be read as requiring some statistical quantum of proof as to the likelihood of re-offense. In Hendricks, the Supreme Court recognized that the Kansas civil commitment statute required only proof of the respondent's *risk to reoffend* if released. 521 U.S. at 357 (noting statute required proof of "likelihood"[3] of committing sexually violent conduct).[4] Here, Congress specifically chose language that did not require proof of any specific statistical

---

[3] Though such language is not present in the Adam Walsh Act, even some SVP statutes which specifically include language concerning whether an individual is "likely" to sexually reoffend have not been construed as requiring proof an any particular statistical likelihood of reoffense. See e.g., M.G.L. c. 123A § 1 (defining a sexually dangerous person as a person "convicted of . . .a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility"). As noted by Massachusetts Supreme Judicial Court in construing the meaning of the term "likely" in their statute:

> While "likely" indicates more than a mere propensity or possibility, it is not bound to the statistical probability inherent in a definition such as "more likely than not," and the terms are not interchangeable. To conclude that "likely" amounts to a quantifiable probability, absent a more specific statutory expression of such a quantity, is to require mathematical precision from a term that, by its plain meaning, demands contextual, not statistical, analysis. . . . "More likely than not" is most familiar as a standard of proof equivalent to fifty per cent plus one. As used in the statute, however, the term "likely" is not intended as a standard or burden of proof. Rather, it is descriptive of one characteristic ("likely to engage in sexual offenses") of a sexually dangerous person. While the Commonwealth is required to prove beyond a reasonable doubt that a person is sexually dangerous, that is, has all the characteristics of such a person as defined in G.L. c. 123A, § 1, *it is not required to prove to any particular mathematical quantum the likelihood of his committing another sexual offense*.

Commonwealth v. Boucher, 438 Mass. 274, 277 (2002)(emphasis added).

[4] The government has not found a state civil commitment statute that uses precisely the same language as the Adam Walsh Act, but the wording of the Kansas civil commitment statute is similar and is the statute examined by the Supreme Court in Hendricks. The statute "establishes procedures for civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' are likely to engage in 'predatory acts of violence.'"). Kan. State. Ann. §59-29a01, et seq. (1994).

quantum of proof with respect to whether Hunt would re-offend focusing instead upon the issue of whether Hunt's Pedophilia would impair his ability to control his behavior. See 18 U.S.C. § 4247(a)(6); and, e.g., United States v. Locke, 471 U.S. 84, 95 (1985) ("[D]eference to the supremacy of the Legislature, as well as recognition that [members of Congress] typically vote on the language of a bill, generally requires us to assume that 'the legislative purpose is expressed by the ordinary meaning of the words used.'") (quoting Richards v. United States, 369 U.S. 1, 9(1962)). "Serious difficulty refraining" inquires about whether Hunt's mental illness impairs his volitional control, not about any statistical likelihood of re-offense.

Thus, the Adam Walsh Act does not require proof that a particular respondent will reoffend, as Congress presumably recognized such a burden is impossibly high, but rather requires an assessment of the risk a respondent presents of reoffending.

### 1. The Actuarial Instruments Support a Finding that Hunt is Sexually Dangerous.

To determine whether Hunt would have serious difficulty in refraining from sexually violent conduct if released, each of the experts who evaluated Hunt scored him on at least one actuarial risk assessment instrument. Dr. Phenix, a co-author of the Static-99 coding manual, scored Hunt on the Static-99, Static-2002, and MnSOST-R. She assessed Hunt a score of 11 on the Static-99, placing him in the highest category of sexual recidivism. Ex. 5; Tr. 4/29/09 35:21-21. The range of scores one can receive on the Static-99 is between 0 and 12; the average score is a 2. Tr. 4/29/09 35:14-19. Dr. Rosell also scored Hunt an 11 on the Static-99. Tr. 4/27/09 126:24-25. Dr. Katz, albeit very informally, scored Hunt an 8 or a 9 on the Static-99, which still

places Hunt in the highest risk category. Tr. 4/28/09 110:21-22.[5]

The rates of recidivism associated with the different scores are what experience and research have established as the rates at which all male sex offenders with particular scores will recidivate over different periods of time. The rates should not be viewed as a prediction of whether any particular respondent will reoffend, and that is certainly not what the Adam Wash Act requires this Court to determine. See supra. Risk assessment reoffense rates are most helpful when viewed in light of the dangerousness "element" of the statute, which requires this Court to determine, among other things, whether Hunt would have serious difficulty in refraining from sexually violent conduct or child molestation if released. As noted by Judge Saris, "[a]ctuarial tools are, at best, 'moderate predictor[s] of risk,' and do not enable even experts in the field . . . to predict the future (i.e., whether Mr. [Hunt] will or will not re-offend. . . )." United States v. Shields, 597 F.Supp.2d 224, 236 (D. Mass. 2009).

Because Hunt credibly falls within the high-risk category of sex offenders by one or more validated risk assessment instruments, including the Static-99 and Static-2002, such evidence is a strong indication that he meets the dangerousness "element" of the Adam Walsh Act.

### 2. An Analysis of Dynamic Risk Factors Supports a Finding that Hunt is Sexually Dangerous.

As Judge Saris noted recently, "[a]n offender's risk may be higher or lower based on other factors not adequately measured (or measured at all) by the actuarial instrument." Shields, 597 F. Supp. at 237. Indeed, Judge Saris found that:

---

[5] This Court has denied the Respondent's Motion to Exclude the Experts' Testimony [D. 62]. See Order Dated April 24, 2009. See also, United States v. Shields, 2008 WL 544940 (D. Mass. Feb. 26, 2008). Should the Respondent request reconsideration of the Order, the government reserves the right to further respond.

> while I have considered [the Respondent's] scores on the actuarial instruments, these scores are not the primary basis upon which I rest my conclusion of sexual dangerousness. In fact, I afforded them little weight in my final analysis. Rather, as detailed above, I focused on [the Respondent's] past conduct, lack of successful sex offender treatment to date, and the testimony of the experts *as a whole* (not simply their predictions on the actuarial instruments).

Id. at 236 n. 18 (emphasis in original). This Court should do likewise.

In addition to scoring actuarial instruments to determine whether Hunt is a sexually dangerous person, Drs. Phenix and Rosell also examined empirically validated dynamic factors, such as treatment and support within the community. Tr. 4/29/09 10:8-14. Although Hunt briefly participated in treatment, the length of treatment – six months – is not enough to mitigate his high risk of reoffense. Tr. 4/27/09 141:5-17. Both Drs. Rosell, Phenix and Katz, testified that Hunt would need at least two years of treatment. Tr. 4/27/09142:3-8 (Rosell); Tr. 4/28/09 113:11-115:2; Tr. 4/29/09 86:23-87:24 (Phenix).

In addition, there was no evidence at trial that Hunt has any support from family or otherwise in the outside world. As Dr. Phenix testified, social associations are a significant predictor of general recidivism. Tr. 4/29/09 64:9-65:22. Hunt has shown no ability in the past to form long-term healthy relationships that will help him succeed in the outside world and there is no reason to believe he will be able to do so now.

The evidence at trial shows that Hunt has not successfully completed treatment, has numerous unaddressed problems that are predictive of future sexual recidivism, and in light of his serious offense history, this Court should conclude that Hunt will have serious difficulty in refraining from sexually violent conduct or child molestation if released.

### 3.  The experts accounted for Hunt's age, 62, in their risk assessments and still found that he is sexually dangerous.

Dr. Plaud – the third expert Hunt chose because the first two, Drs. Katz and Rosell, opined that Hunt is sexually dangerous – testified that Hunt meets the first two elements of the Adam Walsh Act but not the third because of his age.  Tr. 4/30/09 24:18-25:16.  Hunt was 62 years old at the time most of the experts performed their risk assessments of him, and he was 63 at the time of trial.  Dr. Plaud testified that, even though Hunt has committed numerous acts of child molestation and suffers from Pedophilia, his age reduces his recidivism risk.  On the other hand, Drs. Katz, Rosell, and Phenix each testified that they are aware of the research that suggests that libido, and therefore sexual recidivism, decrease as age increases.  They further testified that they took this research into account in their evaluations and they concluded that, given Hunt's past history of child molestation, his Pedophilia, and his scores on the actuarial instruments, Hunt's age may mitigate his risk somewhat, but not nearly enough for them to conclude that Hunt is no longer sexually dangerous.

For example, Dr. Rosell testified that age is a factor in risk assessment.  Tr. 4/27/09 149:1-4.  He also testified that he considered Hunt's age in this case but found that the extent and pattern of Hunt's sex offense history, coupled with his high actuarial scores, compels the conclusion that Hunt is sexually dangerous.  Tr. 4/27/09 164:8-165:1.  Dr. Phenix also testified that she considered Hunt's age as part of her risk assessment.  Tr. 4/29/09 73:6-8.  She concluded that Hunt's risk of sexual reoffense is so high and his volitional control is so poor, that Hunt would have serious difficulty in refraining from child molestation or sexually violent conduct if released.  Tr. 4/29/09 178:6-19.

This Court should not credit the testimony of Dr. Plaud.  Dr Plaud premised his opinion

upon an erroneous standard and construction of the law. To illustrate, Dr. Plaud testified:

> How can I conclude that it would be likely that he would reoffend in the future in his 60s, if not confined to a secure facility...I cannot scientifically, statistically, point to anything that would support beyond any doubt, never mind a reasonable doubt, that he [Hunt] would not be – he would not reoffend if not confined to a secure facility at this point in time, and that is the basis for my decision and why I'm here today.

Tr. 4/30/09 34:18-35:1. Dr. Plaud, who testifies extensively in Massachusetts state proceedings on behalf of respondents, based this testimony upon the standards created by the Massachusetts sexual predator law, not the Adam Walsh Act.[6] See also, Tr. 4/30/09 25:5-16; 27: 13-16; 34:18-35:1; and 45:12-13. Contrast 18 U.S.C § 4247(a)(5)-(6).

Dr. Plaud erroneously believes that the Adam Walsh Act requires some quantum of statistical likelihood of re-offense as part a of a finding of sexual dangerousness and incorporates that requirement into his testimony in this Court. Dr. Plaud is mistaken on several levels. First, there is no requirement in the Adam Walsh Act that any specific statistical likelihood of reoffending be proved. Second, even Massachusetts, whose statute specifically includes language concerning the likelihood of reoffending, does not require any quantum of statistical proof of the likelihood of reoffense. See Commonwealth v. Boucher, 438 Mass. 274, 277 (2002); and supra note 3. Dr. Plaud also appears to misconstrue the burden of proof applicable to these proceedings to be

---

[6]See M.G.L. c. 123A § 1 (defining a sexually dangerous person as a person "convicted of . . .a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility").

-12-

proof beyond a reasonable doubt (as is the case in state proceedings), and it would appear from the above noted testimony that these fundamental misperceptions are a significant basis, if not the basis, for Dr. Plaud's conclusion that Hunt is not sexually dangerous.[7]

### III. CONCLUSION

For the foregoing reasons, and based on the evidence admitted at trial, the government respectfully requests that this Court find that Hunt is a sexually dangerous person and civilly commit him to the custody of the Bureau of Prisons.

                                  Respectfully submitted,

                                  MICHAEL K. LOUCKS
                                Acting United States Attorney

                    By:   /s/ Mark J. Grady
                           Jennifer A. Serafyn
                           Mark J. Grady
                           Assistant United States Attorneys
                           United States Attorney's Office
                           Moakley U.S Courthouse
                           1 Courthouse Way, Suite 9200
                           Boston, MA 02210
Dated: June 29, 2009               (617) 748-3100

---

[7] Indeed, because he believes that it must be statistically provable that Hunt would re-offend, a showing that Dr. Plaud feels is near impossible in any circumstance, Tr. 4/30/09 41:13-15, Dr. Plaud testified nothing short of Mr. Hunt himself stating "I intend to sexually reoffend against a child" would be sufficient for Dr. Plaud to find Hunt sexually dangerous.  Tr. 4/30/09 42:8-11.

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 29, 2009.

                                            /s/ Mark J. Grady
                                            Mark J. Grady
                                            Assistant United States Attorney