```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS



UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               ) Civil Action
vs.                            ) No. 1:07-cv-12063-JLT
                               ) June 1, 2010
WAYNE R. HUNT,                 ) @11:05 a.m.
                               )
            Defendant.         )
                               )




                         STATUS CONFERENCE




              BEFORE THE HONORABLE JOSEPH L. TAURO
                  UNITED STATES DISTRICT JUDGE




          John Joseph Moakley United States Courthouse
             1 Courthouse Way, Courtroom No. 22
                      Boston, MA  02210




                  Helana E. Kline, RMR, CRR
                    Official Court Reporter
          John Joseph Moakley United States Courthouse
               1 Courthouse Way, Room 5209
                      Boston, MA  02210
                    helanakline@aol.com
```

```
APPEARANCES:


For the Government:

United States Attorney's Office
 (By:  Mark J. Grady, AUSA and
       Jennifer A. Serafyn, AUSA)
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts  02110
617-748-3136


For the Defendant:

Federal Public Defender Office
District of Massachusetts
 (By:  Ian Gold, Attorney at Law)
51 Sleeper Street, 5th Floor
Boston, Massachusetts  02210
617-223-8061
```

```
 1                      P R O C E E D I N G S
 2            THE CLERK:  All rise for the Honorable Court.
 3            THE COURT:  Good morning, everybody.
 4            MR. GRADY:  Good morning, your Honor.
 5            THE CLERK:  This is Civil Action No. 07-12063, the
 6   United States of America versus Wayne Hunt.
 7            THE COURT:  Sit down, please.
 8            THE CLERK:  Counsel, please identify themselves for
 9   the record.
10            MR. GOLD:  Good morning, your Honor.  Ian Gold on
11   behalf of Wayne Hunt.
12            MR. GRADY:  Good morning, your Honor.  Mark Grady
13   and with me is Jennifer Serafyn on behalf of the United
14   States.
15            THE COURT:  All right.  Thanks all of you for
16   coming in.  I have this letter.  I hope you've had a chance
17   to read it, right --
18            MR. GOLD:  Yes.
19            THE COURT:  -- and I was a little bit at a loss as
20   to how to proceed.  My memory is that in the cases that I
21   have handled much of the information that was used to
22   decide whether somebody was, you know, a potential threat
23   to the community did come from the mouth of the patient
24   himself or herself, and now the objection that the patient
25   seems to have seems to be a reasonable one, unless we've
```

```
 1   already gone over that bridge and I've just forgotten what
 2   the, you know, the global answer is that makes this all
 3   come in?
 4           MR. GOLD:  No, I think with Mr. Hunt it's an erotic
 5   -- "erotic" is probably not the right word, but there's
 6   a lot of information about Mr. Hunt that's in play; but
 7   with respect to what's talked about in the letter, the
 8   program is attempting to solicit new disclosures so we are
 9   at Step 1 with respect to what they're trying to extract
10   from him.
11           THE COURT:  Now, is there any privilege that he has
12   that applies here, so that even if he talks, it can't be
13   used against him?  It certainly didn't kick in in the cases
14   that I've had.
15           MR. GOLD:  Well, there's a federal psychotherapist
16   patient privilege.  They're required to waive it going in.
17   One of the things --
18           THE COURT:  In order to get this treatment?
19           MR. GOLD:  In order to get this treatment and --
20           THE COURT:  So that's why we didn't face it?
21           MR. GOLD:  That's why we haven't faced it in the
22   past.  Although in another case in front of Judge Saris,
23   Judge Saris adopted an order of the magistrate judge finding
24   that one of the waivers in the federal treatment program was
25   inadequate to cover future civil commitment proceedings and
```

```
 1    did exclude the treatment records in that particular case.
 2    That's the Wetmore case as an example, but we haven't
 3    litigated these issues in front of your Honor in the same
 4    way.
 5        With respect to that, though, that was my -- just to
 6    give the Court an idea, I'm sort of also figuring out how to
 7    frame the issues from Mr. Hunt's perspective for the Court
 8    with this letter, but it seemed to me one solution would be,
 9    if this is the crux of the issue, then he's got a privilege.
10    Maybe he can assert the privilege or the privilege can take
11    effect to the disclosures which are being complained of.
12            THE COURT:  And the sad part of that is that he
13    won't receive the treatment that's supposedly going to be
14    very useful for him or better for him to receive than
15    nothing?
16            MR. GOLD:  Well, I believe what Dr. Hernandez is
17    saying is that you need to, according to the way that he
18    says the program is set up, you need to make these
19    disclosures in order to participate fully in the program.
20    In order to make adequate progress in the program, you need
21    to do the sex offense history questionnaire or whatever
22    they call it, and your future progress is contingent on
23    making those disclosures.
24        Mr. Hunt is saying:  Well, that is a burden on my Fifth
25    Amendment rights not to subject myself to future criminal
```

1    prosecution for one thing.  What Dr. Hernandez seems to be
2    saying is -- you know, appealing to the Court in some way to
3    get the disclosures and with respect to Mr. Hunt.
4            THE COURT:  But there's nothing I can do to order
5    him to disclose; it's really --
6            MR. GOLD:  No.
7            THE COURT:  I'm thinking out loud.  It seems to me
8    that this is more a function of your relationship with your
9    client, you know, how you advise him, and what position he
10   takes when he decides which way he wants to go.
11       I mean, if he wants to assert privilege, you're going
12   to have to -- I take it, you'd be the one that would assert
13   that privilege before me; is that right?
14           MR. GOLD:  Well, there's the Fifth Amendment.  Your
15   Honor, this is -- I was sorting this out with Mr. Grady
16   beforehand.
17       I believe I'm at a partial disadvantage because we don't
18   have certain information.  I've been reading -- there are
19   some cases including a case in front of Judge Gertner, the
20   Pentlarge versus Murphy case, where a lot of these sex
21   offender commitment programs have this obvious choice
22   for those guys that they either have to disclose and subject
23   themselves to future criminal prosecution or not proceed in
24   the program.
25       And there is a sort of Fifth Amendment claim there,

```
 1    which I think Mr. Hunt is asserting and we might assert on
 2    his behalf, but we need some more information.  What I was
 3    going to suggest to the Court, while we're thinking about
 4    this, is I've identified certain types of information that
 5    I think would allow us to advance the ball; namely, the
 6    program documents, any consent forms that he's signed, the
 7    curriculum materials, and maybe have the opportunity to
 8    speak with Mr. Hernandez or Dr. Hernandez just to get some
 9    more information so we can it flush out.
10              THE COURT:  How do you accomplish that:  you file a
11    motion to get my permission, is that what you had in mind?
12              MR. GOLD:  That's what I had in mind, yes.
13              THE COURT:  What do you say about that?
14              MR. GRADY:  Your Honor, the government would respond
15    to any motion in a timely fashion.  I think that the Court
16    however has struck very quickly and directly at the heart
17    of the issue.  We have right now a treatment issue, but
18    treatment is not something that is within the province of
19    counsel or this Court really about choosing what treatment
20    is appropriate or how to implement it.
21         Undoubtedly, these individuals have Fifth Amendment
22    rights.  They are well within their rights to assert them;
23    but if they do, there are consequences, but I don't think
24    that it is an impingement by the government on that right to
25    have consequences, anymore so than if an individual chooses
```

```
 1   to assert his right to remain silent and goes to trial and
 2   later complains that I got a longer sentence because you're
 3   punishing me for going to trial because I remained silent.
 4   It doesn't work that way.
 5      If these individuals want to participate in treatment
 6   and get out earlier, they can but they have to make the
 7   disclosures that are required by the professional treatment
 8   or the treatment program that's been created by those
 9   medical professionals at BOP.
10           THE COURT:  But Mr. Gold takes it a step further, he
11   says that in order for him to give really proper advice to
12   his client he needs more information.
13           MR. GRADY:  I think --
14           THE COURT:  It seems to me that that's a pretty
15   neutral step that he's talking about?
16           MR. GRADY:  I think, your Honor, that the issue is
17   clearly joined at this point that this is an issue which
18   has been in the context of state treatment programs
19   litigated extensively both in state and federal courts and
20   a few things have come out of it.
21      In Youngberg versus Romeo, which is 457 U.S. 307 @321
22   to 323, the U.S. Supreme Court described or essentially
23   created a very, very limited role of the courts in making
24   treatment determinations with respect to essentially
25   committed individuals holding basically that the
```

```
 1    constitutional inquiry only requires that the courts make
 2    certain that professional judgment was, in fact, exercised.
 3    It is not appropriate for the courts --
 4            THE COURT:  I think maybe I didn't make myself
 5    clear --
 6            MR. GRADY:  I'm sorry, your Honor.
 7            THE COURT:  -- I don't mean I would make the
 8    decision.  I'm trying to help Mr. Gold to make a decision
 9    as he advises Mr. Hunt, and I want to make sure that he's
10    got as much information -- and he seems to indicate he needs
11    a little more information in order to feel comfortable in
12    advising Mr. Hunt.
13       At the outset I said I thought that it was Mr. Gold and
14    Mr. Hunt that had this issue to deal with, not me --
15            MR. GRADY:  Very well, your Honor.
16            THE COURT:  -- nor you.  Do I make myself clear on
17    that?
18            MR. GRADY:  That I understand, your Honor.  I
19    apologize.
20            THE COURT:  So that I want to make sure that he
21    gets as much information as he needs in order to talk to his
22    client and say:  I think you ought to do this or I don't,
23    you know, consistent with what you were just saying.
24            MR. GRADY:  I entirely agree, your Honor.  I think
25    it should be presented by way of motion so the government
```

```
 1   has an opportunity to address whatever specific requests are
 2   made.
 3           THE COURT:  So why don't you do that?
 4           MR. GOLD:  We'll do that.
 5           THE COURT:  And let your client know that you're
 6   acting on his behalf, and you'll be paying some attention to
 7   Dr. Hernandez --
 8           MR. GOLD:  Dr. Hernandez's letter.
 9           THE COURT:  Okay.  Is there anything else I should
10   take up with you while I have you here?
11           MR. GOLD:  No.  That will get the ball moving, your
12   Honor.
13           THE COURT:  All right.  Thank you very much.
14           MR. GOLD:  Yep.
15           (Whereupon, the proceedings at 11:33 a.m.)
16
17
18
19
20
21
22
23
24
25
```

```
 1                      C E R T I F I C A T E
 2
 3       I, Helana E. Kline, a Registered Merit Reporter,
 4   Certified Realtime Reporter, and Federal Official Court
 5   Reporter of the United States District Court, do hereby
 6   certify that the foregoing transcript, from Page 1 to
 7   Page 11, constitutes, to the best of my skill and ability,
 8   a true and accurate transcription of my stenotype notes
 9   taken in the matter of the United States of America v.
10   Wayne R. Hunt.
11
12
13
14
15
16
17
18
19
20
21
22
23       /s/ Helana E. Kline                    August 9, 2012
24        Helana E. Kline, RMR, CRR
25        Federal Official Court Reporter
```